UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHAD DETRICK,

    Plaintiff,

v.

HEIDTMAN STEEL PRODUCTS, INC.,

    Defendant/Third Party Plaintiff,

v.

JD CONSTRUCTION ENTERPRISES, LLC

    Third Party Defendant.
_____/

Case No. 2:13-cv-14977

HONORABLE STEPHEN J. MURPHY, III

**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT** (document no. 32)**,
DENYING THIRD PARTY PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT** (document no. 33) **AS MOOT, AND DENYING THIRD PARTY
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** (document no. 34) **AS MOOT**

Plaintiff Chad Detrick ("Detrick") sued Defendant Heidtman Steel Products ("Heidtman") after being injured while working on Heidtman's property. Compl., ECF No. 1. Heidtman then filed a third-party complaint against JD Construction Enterprises, LLC ("JD"), the company for which Detrick was working when he was injured, seeking indemnification. Third Party Compl., ECF No. 9. Before the Court are three motions for summary judgment: Heidtman's Motion for Summary Judgment against Detrick, ECF No. 32, Heidtman's Motion for Summary Judgment against JD, ECF No. 33, and JD's concurring Motion for Summary Judgment against Detrick, ECF No. 34.

Having carefully reviewed all the evidence and filings, the Court finds that Detrick has no viable claim against Heidtman. Michigan tort law does not allow recovery for injuries

resulting from open and obvious conditions except in a few narrow circumstances that are not present in the case. The Court will therefore grant Heitdman's Motion for Summary Judgment against Detrick. The judgment will nullify the need for indemnification from JD, and the Court will deny as moot Heitdman's Third Party Motion for Summary Judgment. JD's concurrent Motion for Summary Judgment is likewise moot.

**BACKGROUND**

Heidtman manufactures steel throughout the Midwest, including at a complex in Erie, Michigan. Mot. Summ. J. 1, ECF No. 32. In September 2011, a small fire occurred in the attic of one the Erie complex buildings. In response, Heidtman decided to replace the attic's cellulose insulation with fiberglass. *Id.* at 2. Heidtman's owner had previously retained JD to perform various services at Heidtman's plants, and tasked JD with removing the old insulation and repairing the fire damage in the attic. *Id.* Detrick worked for JD, and was part of a three-person team that labored in the attic on September 29 and 30, 2011. *Id.* at 5.

Witnesses agreed that the attic was ordinary. *Id.* at 4. Joists ran across the "floor" of the attic about two to three feet apart, with drywall ceiling between them. The insulation rested on top of the drywall. *Id.* There were cables strung throughout the attic, and Detrick claimed that there were a number of exposed nails, although other witnesses did not recall seeing any protruding nails. *Id.* The attic was given some lighting and the team was instructed not to step on the drywall between the joists. The workers used shovels and a shop-vac to collect the old insulation and placed it in "bulky" bags. *Id.* at 5. Witnesses noted the challenge of navigating the bags around the attic, and avoiding the cables while stepping only on the joists. *Id.*

On the morning of September 30, Detrick was carrying two bags of insulation to the entrance of the attic. He set them down to climb over a cable, but lost his footing and stepped onto the drywall ceiling. *Id.* at 6. The drywall gave way and Detrick fell through the drywall and onto concrete floor of the shop below. Compl. 3, ECF No. 1. The parties disagree as to the height of the ceiling and attic above the shop floor: Detrick claims it was a 25 to 30 foot drop, while JD claims it was only 12 feet. *Id.*; Mot. Summ. J. 5 n.4, ECF No. 34. Detrick suffered severe injuries, including a left calcaneus fracture, a head laceration, and a concussion. Resp. 6, ECF No. 47. Detrick filed the current suit against Heidtman on December 6, 2013.

**STANDARD OF REVIEW**

Summary judgment is proper if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material for purposes of summary judgment if its resolution would establish or refute "an essential element of the cause of action or defense advanced by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine if there is evidence upon which a trier of fact could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To demonstrate that a fact is, or is not, genuinely disputed, both parties are required to either "cit[e] to particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Civil Rule 56(a) serves "to dispose of cases without trial when one party is unable to demonstrate the existence of a factual dispute

which, if present, would require resolution by a jury or other trier of fact." *Schultz v. Newsweek, Inc.*, 668 F.2d 911, 918 (6th Cir. 1982).

In considering a motion for summary judgment, the Court must view the facts and draw all inferences in the light most favorable to the non-moving party. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). But, a mere "scintilla" of evidence is insufficient to survive summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The entry of summary judgment is appropriate if the nonmoving party fails to present evidence that is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the non-moving party's case."); *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996) (explaining the "mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment").

## DISCUSSION

Detrick brings three claims against Heidtman: premises liability, nuisance per se, and nuisance in fact. Compl. 3–6, ECF No. 1. In his Response to Heidtman's Motion for Summary Judgment, Detrick requests leave to amend his complaint to allege additional counts of negligence and the law of inherently dangerous activity. Resp. 7, ECF No. 47. Because the request is both untimely and legally futile, the Court will deny it, and address Detrick's three original claims in turn.

I. Premises Liability

Detrick argues that Heidtman breached its duties as a landowner "by failing to observe, inspect, warn, protect, minimize, and provide for Plaintiff." Compl. 4, ECF No. 1. Both parties agree that Detrick was an invitee for liability purposes. In Michigan, a property owner has the duty to keep its property in reasonably safe condition and to exercise due care to protect invitees from dangerous conditions. *Riddle v. McLouth Steel Prod. Corp.*, 440 Mich. 85, 90 (1992). An owner generally owes no duty to an invitee, however, "to warn of or protect from open and obvious dangers . . . absent special aspects." *Buhalis v. Trinity Continuing Care Servs.*, 296 Mich. App. 685, 689 (2012). The "special aspects" exception to the open and obvious rule is narrow: "only those special aspects that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided" will allow a plaintiff to recover. *Lugo v. Ameritech Corp., Inc.*, 464 Mich. 512, 518–19 (2001).

Furthermore, Michigan premises liability law contains special rules for independent contractors like JD. "Under Michigan law, an employer of an independent contractor is generally not liable for injuries sustained by the independent contractor's employees." *Sprague v. Toll Bros.*, 265 F. Supp. 2d 792, 795 (E.D. Mich. 2003).[1] There are three exceptions, and the employer of a contractor can still be liable when (1) the owner maintains control over the project, (2) the work space is shared by several independent contractors, or (3) the owner hires the contractor to perform inherently dangerous work. *Id.* Detrick's claim fails both under the general and contractor-specific premises liability law of Michigan.

---

[1] Detrick attempts to argue that he was not an employee of JD. Resp. 8–10, ECF No. 47. While it is apparent from the facts that Detrick was almost certainly an employee rather than an independent contractor, the distinction is legally irrelevant to the case.

A.  General Premises Liability: Open and Obvious

The danger of working in the attic was open and obvious, and Detrick has not shown that any special aspects existed to create an unreasonable risk of harm. Detrick claims that the special aspect requirement is met by "working in a floorless attic without personal fall arrest devices of any kind." Resp. 11, ECF No. 47. His contention fails. Joist-drywall attic construction is not a rare or atypical condition, nor are darkness or nails. "A plaintiff may not recover if the condition is so common that the possibility of its presence is anticipated by prudent persons." *Buhalis*, 296 Mich. App. at 694 (internal quotation marks omitted). The dangers of the attic were common, and Detrick not only anticipated the dangers but was warned of them. Detrick was made aware of the need to step only on the joists, and there were no hidden dangers. Thus, Detrick's special aspect claim rests entirely on his working at a height without a fall-arrest device, which Michigan courts do not consider a "special aspect."

In *Perkoviq v. Delcor Homes-Lake Shore Point, Ltd.*, the plaintiff was employed by a subcontractor working on residential construction. He slipped due to ice or frost while working on a roof and fell twenty feet to the ground, seriously injuring himself. 466 Mich. 11, 12 (Mich. 2002). The court found that the ice and frost constituted an open and obvious danger, so the issue remained whether the condition of the roof created an unreasonable risk of harm. The height of the roof was not enough: the plaintiff had to present evidence of "special aspects" that differentiated the roof from other snowy, frosty sloped roofs. *Id.* at 20. Similarly, Detrick has presented no evidence here that Heidtman's attic possessed special aspects that made the risk of harm unreasonable. Rather, the attic's dangers were those common to many attics. Heidtman "could not expect" that its contractor's employees

6

"would fail to take necessary precautions to guard against the obvious danger" of the attic's joist-drywall construction. *Id.* at 19.

Detrick cites a Michigan case in which a general contractor was held liable for failing to provide fall-prevention equipment to its subcontractors working at heights. *Latham v. Barton Malow Co.*, 480 Mich. 105 (2008). But *Latham* concerns the common-work-area doctrine, which differs from general premises liability theories applicable here. Detrick has no valid claim under general premises liability.

    B.    Contractor-Specific Liability: Inherently Dangerous

Detrick's claim is also barred by specific Michigan law that has developed around the hiring and use of contractors. Property owners have no duty to protect the employee of a contractor "hired to perform construction work on the owner's premises, from the hazardous condition that contributed to the plaintiff's injury, where the defendant delegated to the contractor the task of performing the construction work." *Jones v. DaimlerChrysler Corp.*, 488 Mich. 1036, 1036 (2011); *see Banaszak v. Nw. Airlines, Inc.*, 485 Mich. 1038 (2010). As stated above, for an owner to be liable for the injuries of the contractor's employee, one of three exceptions must exist: (1) the owner must maintain control over the project, (2) the work space must be shared by several independent contractors, or (3) the owner must hire the contractor to perform inherently dangerous work. *Sprague*, 265 F. Supp. 2d at 795.

Heidtman did not maintain control over the project. *See* Mot. Summ. J., Ex. A, Garno Dep. 52–53, ECF No. 32. Control requires maintaining "a dominant role" in the project, like developing plans, creating specifications, and supervising the work. *Funk v. Gen. Motors Corp.*, 392 Mich. 91, 105, 108 (1974), *abrogated on other grounds by Hardy v. Monsanto Enviro-Chem Sys., Inc.*, 414 Mich. 29 (1982). Heidtman did none of these things, and

7

expected JD to be responsible for the work. Furthermore, at the time of the accident, only JD employees were working in the attic. The first two exceptions — maintained control and common work space — are not applicable, and only the issue of whether the work was inherently dangerous remains.[2]

Detrick argues that working in a joist-drywall attic was inherently dangerous, and that Heidtman should have provided him with further safety equipment. Under Michigan's premises liability law, the argument is inapposite. A work project is only inherently dangerous if its risks cannot be eliminated by appropriate safety measures. *Sprague*, 265 F. Supp. 2d at 796. By arguing that Heidtman should have provided safety equipment, which would have prevented the injury, Detrick effectively admits that the work was not inherently dangerous. "Michigan courts have consistently held that an activity is not inherently dangerous when the risk involved could be eliminated by the proper use of appropriate safety equipment." *Id.* at 797. Therefore, the work was not inherently dangerous. In such cases, public policy encourages the independent contractor to take responsibility for their own employees' safety, rather than the property owner. Heidtman is not liable under either general premises liability or contractor-specific liability.

II. Nuisance Per Se

"[A] nuisance per se is an activity or condition which constitutes a nuisance at all times and under all circumstances, without regard to the care with which it is conducted or maintained." *Li v. Feldt*, 439 Mich. 457, 476–77 (1992). Detrick alleges that Heidtman's "acts and omissions caused a hazardous and dangerous condition . . . [that] was

---

[2] The Court notes that the "inherently dangerous work" exception, although factually similar, is conceptually distinct from "unreasonable risk of harm."

unreasonable by its very nature at all times and under any circumstances and constituted a nuisance per se." Compl. 5, ECF No. 1. Detrick further argues that Heidtman's opening of the attic to Detrick, his coworkers at JD, and anyone else who might service it constitutes "exposure of the hazard to the general public." Resp. 18, ECF No. 47. Both contentions are meritless. It is established that the attic's construction was typical and common. To suggest that the construction constitutes a nuisance per se, especially when reachable only by very few people, is without merit.

III.   Nuisance in Fact

In contrast to nuisance per se, a nuisance in fact becomes a nuisance only by reason of circumstance or surroundings. *Ford v. City of Detroit*, 91 Mich. App. 333, 335 (1979). Detrick claims that Heidtman "caused a hazardous and dangerous condition relating to any work to be performed by persons on Defendant's upper floor" to exist, which constituted a nuisance in fact. Compl. 6, ECF No. 1. Because the attic could not have constituted a public nuisance, Detrick's final argument is that it constituted a private nuisance in fact. The claim also fails, because pursuit of a private nuisance requires a showing of "a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Adkins v. Thomas Solvent Co.*, 440 Mich. 293, 302 (1992). Detrick had no interest in the property, and therefore cannot bring suit for a private nuisance.

In short, Detrick has no claim for public or private nuisance, per se or in fact. Furthermore, he also lacks a claim under premises liability. The Court will grant Heidtman's Motion for Summary Judgment.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment (document no. 32) is **GRANTED**.

**IT IS FURTHER ORDERED** that Third Party Plaintiff's Motion for Summary Judgment (document no. 33) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Third Party Defendant's Motion for Summary Judgment (document no. 34) is **DENIED AS MOOT**.

**SO ORDERED**.

                                                s/Stephen J. Murphy, III
                                                STEPHEN J. MURPHY, III
                                                United States District Judge

Dated: November 30, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 30, 2015, by electronic and/or ordinary mail.

                                                s/Carol Cohron
                                                Case Manager